and call our next case which is Brooks v. Wachovia et al. Brooks v. Wachovia et al. Good afternoon. My name is Ann Miller. I represent the appellant, Plaintiff Below, Ralph Brooks, Jr. And I would like to reserve four minutes for rebuttal, if I could. Go ahead. Thank you. In reviewing the district court's holding that this case is precluded by the prior litigation in the prior settlement of a class action, which was captioned Parski v. First Union Bank, the initial inquiry that this court has to make is whether the prior Parski case shares the same factual predicate as this case. Counsel, how would you differentiate Parski and Brooks? Okay. Essentially, Parski dealt with the conversion in the decision of First Union Bank to terminate certain of its common trust funds and convert them into shares of its mutual funds. In so doing, they solicited the approval of certain of the account beneficiaries and promised that this conversion would not result in any additional tax liability. That was not the case. There was substantial federal tax liability that resulted from the conversions. And in addition, apparently in 1998, First Union filed a number of false tax returns in which they understated the income for certain of the funds. That case was limited to conversions that occurred in the nine funds that are mentioned there. But wasn't the case also involving the impropriety of these conversions, forcing people to go into funds of the bank rather than to shop around for the best funds available? And also, wasn't it done allegedly for the financial benefit of the bank? I believe those allegations were made, certainly, Your Honor. But I don't believe they were the central thrust of this case. How can we tell if they were or were not the central thrust? I think if you look at the allegations in the complaint, it's clear. This is the Parski complaint, the amended complaint. In the settlement notice and even in the court's decision certifying that class action, the real thrust of that case was the tax liabilities that these individuals ended up paying when they were told that that was not going to be the case. So, yes. Was there any disclaimer of the other allegations? Was there any finding that the other allegations weren't relevant? Was there any limitation of the recovery to the tax allegations as opposed to all the allegations? I think if you read the notice, the settlement notice, it is clear that the recovery was limited to the tax that was limited exclusively. That may have been the settlement. That was the settlement. And I don't see there was any litigation of those issues either in that case. There was certainly no finding, as I recall, in the certification that there was a resolution or that those were the kind of criteria that they were looking for in order to settle the case. How do those omissions, or how do we deal with those omissions? Let's assume we agree with you totally. When you have a waiver as sweeping as you do in Parski, and the law that's cited by your adversary, and yourself in part, seems to indicate that if the parties wish to settle matters between them, it's over. And you can sweep in. That's a bad word to use in this case. But you can sweep in a lot of stuff, right? Well, I think you can. But I think this circuit and I think that the Pennsylvania Supreme Court has been very clear that later claims based on future conduct that does not have the same factual, same nucleus of operative fact cannot be settled in a class action. But doesn't it have the same nucleus of operative fact? I mean, we have this chart that's laid out as part of the district court opinion here, showing exactly what went on here and what was going on, what Wachovia did. It's exactly what Parski was claiming they did as well. They took the funds of other people, they put them into wholly owned subsidiaries, not deciding to put them into unaffiliated market funds. They benefited from it with the fees. I mean, these allegations and the operative facts, you know, you're talking about the thrust, but the operative facts are really exactly the same. No, they are not. And then we look at the release. Well, then how are the operative facts different? The operative facts are different in this respect. First, Wachovia put into effect a business plan, the Wachovia plan, that mandated that for accounts like plaintiffs, 100% of the assets in that account should be in an evergreen fund. So you took away all the choices, potential choices, that any of the administrators had. Secondly, the bank charged excessive fees for the administrative and advisory services that were substandard. Well, that's included here in Parski, Paragraph 27, and yours, Paragraph 142. Your Honor, here's the problem. Whatever fees were being charged back in 1999 by a predecessor, First Union, and the fees that were being charged after the merger of First Union and Wachovia, they're not the same. Sure, they are charging fees for their services, but we're talking about the imposition of the business plan. We're talking about fees that are revealed in quarterly statements that are sent to the account beneficiaries, which we believe are misleading, are excessive for the kind of services that they're getting. I think the argument is kind of like the Big Bang Theory. Not everything arises from what First Union did when they charged. Of course they're going to charge fees. Well, then let's assume that it isn't. Let's assume that there are differences. Then how does the release, notwithstanding that, how does the release not encompass all of these things that you now say are different? First of all, Your Honor, I don't think and I think the law is pretty clear that future actions that do not share, and this Court has even used the word an identical factual predicate, are not able to be released in a class action settlement. And if you look at the language of the release, which is found in the notice, which is in the record. Well, it's on page 11 of your brief, too. Right. Page 11 of the district court opinion, A14. I think the language there is also not as broad as you make it out. I mean, this is what the release starts out saying. In consideration of the foregoing, the settlement agreement provides a broad release of claims relating to first union's conversion of the class funds and tax over report in 1999, period. That's what the release says. And then it goes on to say that it covers each and every direct individual class. Right, right, right. I'm at appendix 122. I'm down at the language that reads, occurrences, disclosures, statements, representations, admissions, or failures to accept, forth, alleged, referred to, or otherwise embraced. In this case, this case refers to Parski. And Parski referred to events that occurred in 1999 by a corporate defendant that is not this same defendant. So I don't see how you should or could read that language to include the allegations that were made in this case. Well, now. Yes. An objection to sweep fees was made in Parski, right? No, I don't believe it was. I don't think the word sweep fees. I understand that the district court made that determination. But I have read everything I could about the Parski case, and I never saw the word mentioned, sweep fees. Well, I mean, perhaps the fact that that term was not mentioned does not indicate that objection was not made to the fees, including the fees of using funds and investing them. Well, but, Your Honor, I mean, if we're going to say that sweep fees were included, I think it would be important to find a reference that we could identify as being sweep fees. Well, it says non-advisory fees. Well, well. So that could encompass a lot. Yes, but we don't know what it does encompass. And that's the fact, and that's the problem here. And so if you're going to say that this case settled it, I think you would need a much clearer record than you had in front of the district court to make that determination. You may be able to put evidence in the record, but it's certainly not there, not on the basis of what we have. But this was, after all, a motion to dismiss a complaint. You mentioned before something about identical, that the case law supported an identicality. What case do you have for that proposition? Well, you said it in a case that is admittedly not precedential. Well, then. So, and let me. Those don't really exist. So it doesn't exist. But in any case, I think the term that is most normally used is sharing a common nucleus of operative facts. And I, yes, yes. The district court reviews. Oh, I'm out of time. I'm so sorry. I'm sorry. It's on the subject. And you've got the Prue case. You have three representatives. And you have the district court taking out language and signing with approval the very broad sweep. Are you saying that there's a whole other line of case law that narrows this broad sweep? I think that the district court incorrectly cited the broad sweep of those cases. And if you actually read the cases, and I'd be glad to go through each and every one of them with you, you will not see the statements, the broad statements about what you can't, you know, the effect of a release in a prior action that the district court made. And I know I'm well over my time, and I apologize. Just conclude. Yes. But in conclusion, even if you found that they shared the same factual predicate, you still have to look at whether the notice that this plaintiff and the other plaintiffs received was adequate and clearly conveyed that. And that — Well, that's a collateral attack. You can address that on rebuttal if you'd like. Okay. All right. Thank you so much, Ms. Milack. Thank you. Good afternoon, Your Honor. On behalf of the Wachovia defendants' appellees. At its essence, Wachovia in the late 1990s made the conversions from common trust funds into affiliated mutual funds. Mr. Parsky sued on behalf of a class in 2000. After a motion to certify a class, the class was certified. After litigation, the case was settled for $23 million, in exchange for which Wachovia, who was by now the defendant in the Parsky case, negotiated a very broad release governing a class of more than 8,000 members. As the appellant notes in its brief, the release is broad. It refers to unknown claims. It refers to unsuspected claims that any class member then had or may have in the future that related any way, directly or indirectly, to the transactions or events described in the Parsky complaint. Does it specifically say, or in the future? It says unknown or unsuspected that they have or may have. Well, but that might be it, that they have at that moment. Known or unknown, suspected or unsuspected, wouldn't that apply? Had, now has, or may hereafter have. Right. Had, now has, or may hereafter have. May hereafter have. Okay. At essence, Your Honors are correctly recognized that the transaction that was being challenged was the conversion. They sought damages for and obtained settlement money for one particular consequence of that conversion, which were the adverse tax effects. Mr. Brooks is now complaining that there's something else about that conversion that he didn't like. These funds weren't any good, and they were expensive, and they didn't have competitive rates of return as compared with other non-affiliated mutual funds. That's precisely the reason why, when you're settling class action litigation, it's imperative to put broad releases of known and unknown claims, because you're not getting into the heads of every unknown class member and what their particular grievances about the transaction may be. Here, in an effort, if Mr. Brooks believes that something untoward happened in connection with his funds, when he sued in 2006, he could have brought claims of breaches of fiduciary duty, et cetera, in orphan's court. What he wants to do is sue on behalf of a class. And so to do that, he needs to identify single representations or uniform statements or omissions that he can then impute to all class members, which is why he goes back, not to look at any individual transaction or investment decision made in any trust, but goes back to the quote-unquote uniform policy that the bank implemented in the 90s, in other words, the conversion. If you look throughout the Brooks amended complaint, I think I identified this morning a dozen instances where he talks about misrepresentations, omissions, acts of self-dealing, going back to 1998, 1997, and continuing on to the present time. However, when Parsky was settled in 2003, it swept in anything, including any of those acts, known or unknown, suspected or unsuspected, that had occurred at that time. There's not a single allegation in the Brooks complaint of any new conduct that occurred after the Parsky settlement had been negotiated and approved by the court. Mr. Brooks doesn't explain in its briefs or in her argument here today how the language of the release, how the court can give effect to those words, unknown, unsuspected, have or may hereafter have, unless it's read in the broad way that the district court concluded below. We think that it's clear that the district court got it right, whether as a matter of Pennsylvania law or federal law, that the gravamen of both complaints overlaps sufficiently to share a common nucleus, such that the complaint must be dismissed as released. Let me ask you a question. If, hypothetically, a benefitee of a trust objects to the sweep fees and joins a class action, which has as one of its claims that the sweep fees were improper, and there's a settlement and the benefitee of the trust participates in the settlement and then goes on to maintain a trust with the bank and the bank continues the sweep fees, can that person benefiting from the trust periodically then sue the bank because of the sweep fees on the same grounds, basically the same claim that was made before, that if you continue banking with the institution that you have recovered from for a certain allegation and you choose to keep your funds in that bank, can you periodically then sue the bank again for the same practice that, I mean, isn't that? That's what the bank negotiated. I would hope anyone who negotiated a release on that term didn't pay a lot of money for it because you're not buying any piece, much less complete piece. That's not what Wachovia did here. They did negotiate for a complete piece, a broad release. In the absence, you know, whereas here you have an allegation of simply continuing conduct, this begins to look very much like the prudential cases where the plaintiffs allege continuing conduct or try to sue on policies that are carved out of the underlying settlement, that the gravamen of their complaints, the sales practices, the unfair representations that were made to them are exactly the same as what was settled and released. So the short answer to your question is no. My question perhaps was not very elegant, but I think you understood what I was trying to say. But the problem then is that the bank keeps doing what it should have stopped doing because it will argue that, oh, but I've been released forever, and then it keeps doing this after 2003. Isn't that a problem? Well, it feels like an immunity grant, you know, that you're arguing. There are, I guess, two separate answers to that. One is that any beneficiary, any trust beneficiary who was not a member of the Parsky class isn't bound by this release and can sue the bank wherever and whenever it wants, including for allegations such as these. Mr. Brooks, unfortunately, is in that class and is not free of that restraint. The second answer is that this doesn't give the bank any free pass or continuing immunity from any kind of actions by the Attorney General of Pennsylvania, by the Securities and Exchange Commission, other entities that have oversight responsibilities for national banks and trust departments in their fiduciary roles and capacities. So there are plenty of other ways of if what is going on here is unlawful or untoward, the bank can be held liable for it, just not in the context of another civil suit by a member of a class that accepted the benefits of a settlement. If the Court has no further questions, I'll rest on my brief. Thank you. If I could, I would just like to, at the outset, remind the Court that the notice here, I think, is particularly important. And the case, Your Honor, that I'm referring to that says even if you determine that there is a race judicata effect, you still have to look at the adequacy of notice, is Wilkes v. Phoenix, which is the Pennsylvania Supreme Court case that we cited, too, in the brief. But you're trying to level a collateral attack. I don't believe so, Your Honor. We're really looking at whether the language and that settlement is — I'm not attacking the settlement at all, as a matter of fact. We think it did a fine job of settling the tax problems that happened as a result of the conversion. But this is a case where the plaintiff had — he could not escape from his relationship with the bank. So you have a fiduciary getting a release from the individuals who were in its — that they were a trustee for in their care. And they had a continuing relationship. He, the plaintiff, could not just get up and walk away, as in so many of these other cases. I don't know about that. I mean, you could go into — I would think you could go into Orphan's Court and say what's going on and have some change affected. Or you opt out of the settlement. Well, that's one of the problems. And I was just getting to that point. We do not know, on the basis of this record, whether or not this plaintiff even had the ability to opt out of the settlement, because we do not know how notice was given to him. I mean, there's no record about that. He got the money and he cashed the check. Well, he didn't get the money and cashed the check. The money was deposited into his trust account. That does not mean he received — and we specifically say, Your Honor, he did not get the notice. But even if he had gotten that notice, I think you have to look at the language in the notice and say, does this clearly tell someone like this plaintiff that forevermore, if you have a problem with the amount of money, with fees or with any of the actions or the choice, the selection of what's in your account, you can no longer take action against the trustee of your account. It's over. And we don't even know if one dime was ever given for that release of the money that he received in his trust account. There's no record here to tell you that, yes, he got $1,000. $500 was for release of all his future claims for any breach of fiduciary duty that has to do with fees or stock selection. And it's over. And, you know, if you read this notice — I'm sorry, Your Honor, maybe I'm just dense, but I don't see any language there that would tell me that that's what I'm doing. Does it refer to settlement documents? It does refer to settlement documents. And, Your Honor, if you read those settlement documents, I do not see how you would ever take that from this release. Are you saying the release language was not in the settlement documents? The release language is there, but I don't think if you read everything that you could have possibly read, Ralph Brooks, the idea that he would do this, but anyone who had gone and taken a look at the settlement agreement, the amended complaint, even the class certification opinion, would ever know that one dime was being given to them or that they were settling forever their possible claims of fiduciary wrongdoing. But, again, someone should have taken this up in the course of those proceedings, on an appeal or attack, or done something along those lines. I mean, this is an attempted collateral attack as part of another case. I don't see how under diet drugs and other cases we can even consider that. Your Honor, I don't think that's what diet drug says. I don't think it's what Prudential said. I don't think it's what any court has said, and I would hope that you'll take a look at that, because we're not talking about the settlement. We're talking about whether this release barred this case. And I also, just one point that, Your Honor, Judge Roth, you asked, where does it say future claims? And the term hereafter does not necessarily mean everything the bank does in the future. I think that's an overly broad reading of that. And finally, the idea that sweep fees were included in the prior litigation, I think they talked about non-advisory fees, but there are all kinds of administrative fees that could constitute non-advisory fees, and they are not necessarily sweep fees. So all in all, I think that if you take a careful reading of the cases, especially diet drugs and especially the Prudential settlement, telling someone that this is what we're settling, your tax problems that you had, and then taking that and saying, for now, forever more, you cannot attack this particular party for anything that might have been litigated back then, is just not the way those cases read. And I think it would be wrong to put that kind of an expansive reading on them, because I don't think that's in those cases, Your Honor. Thank you. Thank you. Thank you. The case is well argued. We'll take it under advisement. Thank you. Thank you.